John B. Vesey, Appellant, v. City of Chicago, Appellee.

## Gen. No. 15,038.

1. NEGLIGENCE—*duty of city with respect to streets.* The duty of a city is only to exercise ordinary care to keep its streets and crossings in a reasonably safe condition.

2. INSTRUCTIONS—*when upon obligation of city with respect to its streets erroneous.* An instruction upon this subject as follows, is erroneous as in effect acquitting the defendant of negligence charged:

"The court instructs the jury that the city of Chicago, under the law, is not bound to build its sidewalks or crosswalks or streets of the same height or uniformly level, and if a jury believe from a preponderance of the evidence in this case that the accident in question was caused by the plaintiff stumbling against the rail, and if you further find from a preponderance of the evidence that the street and crosswalk was not defective, as alleged, at the time and place in question, then you should find the defendant not guilty."

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. M. W. THOMPSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and remanded. Opinion filed July 15, 1910. Rehearing denied July 26, 1910.

CASTLE, WILLIAMS, LONG & CASTLE, for appellant.

EDWARD J. BRUNDAGE and JOHN R. CAVERLY, for appellee; EDWARD C. FITCH, of counsel.

MR. JUSTICE MACK delivered the opinion of the court.

On February 2, 1897, between 7 and 8 P. M. plaintiff, walking south on the east side of Stony Island avenue across Seventy-first street, struck the north rail of the Illinois Central tracks which run on Seventy-first street, fell and received severe injuries. One judgment recovered by him against the city was reversed in this court, 105 Ill. App. 191. The verdict of a second jury against him was set aside; on the verdict of the third jury against him judgment was entered. The case is now before us on an appeal from that judgment.

The facts as stated in 105 Ill. App. 191, and as they appear again in this record are as follows:

" * * * Stony Island avenue crosses Seventy-first street. At the point of crossing this avenue is 200 feet wide, and runs north and south; Seventy-first street extends east and west. The Illinois Central Railroad, with double tracks, occupies Seventy-first street at this crossing. On the west side of the avenue there was a good walk made of brick, across Seventy-first street from the north to the south edge of Seventy-first street, except between the north and south rails of the Illinois Central tracks, between which there was a good plank sidewalk, practically level with the rails of the track.

On the east side of Stony Island avenue, north of Seventy-first street, was a twelve-foot plank sidewalk to the north side of Seventy-first street, and from this walk two or three planks had been laid on the ground extending into Seventy-first street toward the rails of the Illinois Central tracks. At the time of the accident the north ends of these planks, that is, the ends next to the sidewalk, were two or three inches below the plank sidewalk, and could barely be seen. The rest of the planks, that is, the portion extending south, where teams going along Seventy-first street, close to the Illinois Central tracks, crossed the planks, were covered with sand and dirt, and lower than at the ends next the plank sidewalk. The north ends of the ties of the Illinois

Central were not covered, and projected up above the ground several inches, and the rail on these ties, being about four inches high, made an obstruction to a person passing along on Stony Island avenue, across Seventy-first street, several inches high.   Between the railroad tracks were cinder paths. The nearest light at the time of the accident was the electric light 200 feet across the street, of the Illinois Central platform.   There was no other light except a street light a block or more away.   Mr. Vesey stumbled over the north rail of the Illinois Central track, plunged forward, and fell, striking his knee on the edge of the other rail."

The main questions in the case are:  1st, Was the city guilty of negligence in knowingly permitting the street at this crossing to be in its then condition, specifically in permitting the ties to project several inches above the ground and the rails four inches more above the ties, thus forming an obstruction.   2nd, Was the plaintiff guilty of contributory negligence.   If the first question is answered in the negative or the second in the affirmative, there can be no recovery.

We are unable to say that the evidence preponderates so clearly in favor of the defendant on either of these questions or in favor of the plaintiff on both of them as to justify this court either in reversing without remanding or in affirming, notwithstanding errors in instructions.

The duty of the city is only to exercise ordinary care to keep the streets and crossings in a reasonably safe condition and therefore there was no error in refusing an instruction that omitted the clause "to exercise ordinary care."   Whether under all of the circumstances such care was exercised was essentially a question for the jury, under clear and proper instructions.

Appellant complains particularly of the fifth instruction as follows:

"The court instructs the jury that the City of Chicago, under the law, is not bound to build its sidewalks or crosswalks or streets of the same height or uniformly level, and if the jury believe from a preponderance of the evidence in this case that the accident in question was caused by the

plaintiff stumbling against the rail, and if you further find from the preponderance of the evidence that the street and crosswalk was not defective, as alleged, at the time and place in question, then you should find the defendant, City of Chicago, not guilty."

The court had already instructed the jury that "the city is not bound to pave 71st street and the mere fact that it was not paved should not be considered as an act of negligence."

The first part of this fifth instruction is, in our judgment, extremely misleading as applied to this case. It states a correct principle of law, but, coupled with the second part, its natural meaning was that the city could permit the ties and rails to be in their then position because crosswalks need not be uniformly level. Under this interpretation, the court itself acquitted the defendant of any negligence in this respect.

Moreover, the question was not primarily whether the street and crosswalk were "defective," but whether they were in a reasonably safe condition. An obstruction may justify finding that they were not in such a condition, but it would not be, strictly speaking, a "defect," and it clearly would not be a defect in construction. As the first part of this instruction referred to the city's duty in *building* a street or crosswalk, the use of the word "defective" in the last part would fairly mean "defective in construction;" otherwise the two parts would have no relation to one another. Under this interpretation the jury were directed to return a verdict for defendant, if they found that the crosswalk had not been defectively constructed, or perhaps if in addition the construction had not been allowed to become defective. Such a direction omitting a vital element in the case, the obstruction, was clearly erroneous.

After two verdicts against him, following a reversal of the one verdict obtained by him, a reviewing court should hesitate again to reverse the judgment because of errors in the instructions. The plaintiff, however, has suffered severe injuries; he is justly entitled to have his case presented to

a jury, free from material error; in our judgment this right has been denied to him and the judgment must therefore be reversed and the cause remanded.

*Reversed and remanded.*